1

2

3

4

5

6          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7                 AT SEATTLE

8  BRENDA K. CLARK,

9                          Plaintiff,          Case No. C13-791-JLR-BAT

10              v.                              **REPORT AND**
                                               **RECOMMENDATION**
11  CAROLYN W. COLVIN, Commissioner of
   Social Security,
12
                          Defendant.
13

14        Brenda K. Clark seeks review of the denial of her Disability Insurance Benefits

15  application.  She contends the ALJ erred by:  (1) finding depression and chronic pain syndrome

16  not severe impairments at step two; (2) finding Ms. Clark not credible; (3) misevaluating the

17  medical opinion evidence; and (4) making insufficient findings at step four.  Dkt. 11 at 2.  As

18  discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further

19  administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

20                              **BACKGROUND**

21        Ms. Clark's benefits applications were denied initially and on reconsideration.  Tr. 78-82.

22  The ALJ conducted a hearing on October 26, 2010.  Tr. 17-35.  Utilizing the five-step disability

23

REPORT AND RECOMMENDATION - 1

1    evaluation process, the ALJ found Ms. Clark not disabled.  *Id.*  At steps two[1] and three, the ALJ

2    found that Ms. Clark's degenerative disc disease of the spine was a severe impairment, but that it

3    did not meet or equal the requirements of a listed impairment.  The ALJ determined Ms. Clark

4    has the residual functional capacity ("RFC") to perform less than the full range of sedentary

5    work.  He found she can occasionally climb stairs, but never climb ladders, ropes, or scaffolds;

6    she can perform frequent handling, fingering, and reaching.  With this RFC, the ALJ found Ms.

7    Clark could perform her past work as a secretary, administrative secretary, and travel agent.  Tr.

8    20-31.  The Appeals Council denied Ms. Clark's request for review.  Tr. 1-6.  There is no dispute

9    that the ALJ's decision is the Commissioner's final decision.

### DISCUSSION

11   *A.     The ALJ did not err at step two*

12          Ms. Clark argues the ALJ committed reversible error at step two by finding depression a

13   non-severe impairment and ignoring her diagnosis of pain disorder.  Dkt. 11 at 5-9.  At step two,

14   a claimant must make a threshold showing that her medically determinable impairments

15   significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S.

16   137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the

17   abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An

18   impairment or combination of impairments can be found 'not severe' only if the evidence

19   establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability

20   to work."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).  "[T]he

21   step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.* (citing

22   *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect" of an

23   _____

[1] Step one is not relevant to this appeal.

REPORT AND RECOMMENDATION - 2

1    individual's impairments in considering severity.  *Id.*

2          Here, the ALJ noted Ms. Clark's diagnosis of mood disorder but found the record did not

3    establish it was a severe impairment.  Tr. 25.  The ALJ gave several reasons.  First, the ALJ

4    stated, "There is no indication in the record that the claimant has engaged in formal mental

5    health treatment . . . ."  *Id.*  Ms. Clark argues this was error because she testified that she saw

6    provider Suzanne Taylor, Ph.D., and record evidence substantiates these statements.  Dkt. 11 at

7    6.  She is correct.  The record establishes Ms. Clark saw Dr. Taylor regarding mental health

8    issues.  Tr. 68 (Ms. Clark's testimony), 425-29 (Dr. Taylor's treatment notes).  The ALJ thus

9    erred in this respect.  Nevertheless, this error was harmless.  A review of Dr. Taylor's treatment

10   notes indicate that they consist almost entirely of a summary of Ms. Clark's self-reported

11   symptoms, all of which appear elsewhere in the record.  *See* Tr. 425-29.  Further, Dr. Taylor did

12   not assess any limitations that would affect Ms. Clark's ability to work.  *See id.*  As such, the

13   error was "inconsequential to the ultimate nondisability determination" and therefore harmless.

14   *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted).

15         The ALJ also relied on the March 2011 intake assessment by Kathryn Johnson, Ph.D.,

16   who concluded that there was "no diagnosis found" with regard to clinical or personality

17   disorders.  Tr. 25.  Ms. Clark admits Dr. Johnson did not find a diagnosis but points out Dr.

18   Johnson's observation that "[p]atient's concerns of depression appear to be a result of decline in

19   physical function."  Dkt. 11 at 6 (quoting Tr. 391).  Ms. Clark, however, fails to explain why this

20   observation by Dr. Johnson establishes error by the ALJ, and the Court finds none.

21         Next, the ALJ noted that Phillip Knowles, Ph.D., diagnosed Ms. Clark with major

22   depressive order in September 2011, but that the examination was solely to develop a

23   comprehensive care plan for Ms. Clark's pain management and Dr. Knowles did not treat her.

REPORT AND RECOMMENDATION - 3

1  Tr. 25.  Ms. Clark argues that the ALJ's reasons for rejecting Dr. Knowles's diagnosis were

2  improper because they "ignore[] the effect of Ms. Clark's impairments in combination."  Dkt. 11

3  at 6.  This is the whole of Ms. Clark's argument on this issue.  Claims that are unsupported by

4  explanation or authority may be deemed waived.  *Avila v. Astrue*, No. C07-1331, 2008 WL

5  4104300, at *2 (E.D. Cal. Sept. 2, 2008) (citing *Northwest Acceptance Corp. v. Lynnwood

6  Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support

7  of claim of error waives issue), and *Independent Towers of Washington v. Washington*, 350 F.3d

8  925, 929 (9th Cir. 2003)).  The Court deems Ms. Clark's argument regarding the ALJ's treatment

9  of Dr. Knowles's diagnosis waived because she fails to offer any explanation as to how the

10  combination of her impairments affects her ability to perform basic work activities.  Moreover,

11  even if Ms. Clark had established that the ALJ's reasons for rejecting Dr. Knowles's diagnosis

12  were improper, the error would be harmless.  A diagnosis alone is not sufficient to establish a

13  severe impairment, and there is little, if any, evidence in Dr. Knowles's report that major

14  depression caused even a minimal effect on Ms. Clark's ability to work.  *See* Tr. 437-440.

15        The ALJ also considered the November 2010 evaluation by Brenda Havellana, Ph.D.,

16  and concluded it did not establish a severe mental impairment.  Tr. 25-26.  Dr. Havellana

17  diagnosed Ms. Clark with mood disorder and opined, "Overall, Ms. Clark's reported

18  psychological problems would pose a mild barrier to her successful vocational engagement, but

19  psychological and cognitive problems do not preclude her successful vocational engagement."

20  Tr. 333-34.  Ms. Clark challenges the ALJ's assessment of Dr. Havellana's opinion by pointing

21  to Dr. Havellana's prognosis, which stated:  "Prognosis is generally deemed to be guarded.  She

22  reports worsening physical problems and noted that her mood related difficulties are exacerbated

23  by her physical problems.  It is unlikely that her psychological difficulties will markedly improve

REPORT AND RECOMMENDATION - 4

in the context of her reported worsening physical limitations." Tr. 334. Ms. Clark asserts that "while it may be reasonable to find mental health symptoms alone are not severe, the combination of her mental health and pain problems arising from her degenerative disk disease is a severe impairment because it results in more than a minimal effect on the ability to sustain work activities." Dkt. 11 at 6-7. Again, Ms. Clark fails to explain *how* the combination of her impairments affects her ability to work, particularly given that the ALJ found degenerative disk disease to be a severe impairment and thus considered the resulting pain in assessing Ms. Clark's RFC. Although Dr. Havellana's prognosis was "guarded," her ultimate conclusion was that Ms. Clark's psychological problems would pose only a mild barrier and would not prevent her from working. Tr. 334. The ALJ did not err in relying on this opinion. *See Molina*, 674 F.3d at 1110-11 (court must affirm where "ALJ's findings are supported by inferences reasonably drawn from the record").

The ALJ also considered the November 2010 opinion of non-examining doctor Michael Regets, Ph.D., who opined Ms. Clark's "attention to chronic physical symptoms and associated mood disorder symptoms would limit the claimant in complying with [a] schedule and sustain[ing] a consistent pace . . . ." Tr. 26 (quoting Tr. 338). The ALJ rejected this opinion, finding the evidence did not support any attention or sustained pace limitations. *Id.* In particular, the ALJ pointed to Dr. Havellana's evaluation, in which Ms. Clark was able to spell the word "world" backwards, perform serial sevens, follow a three-step command, and easily follow the conversation. *Id.*

Ms. Clark contends the ALJ improperly rejected Dr. Regets's opinion because: (1) "Dr. Regets notes that Ms. Clark has an affective disorder, and fails to mark that the impairment is not severe"; (2) "while the ALJ relies on the findings from Dr. Havellana's examination, Dr.

REPORT AND RECOMMENDATION - 5

1    Havellana herself does not come to the conclusion which the ALJ does"; and (3) "it is not

2    specific and legitimate to find Dr. Regets'[s] opinion . . . inconsistent with Dr. Havellana's"

3    because "Dr. Regets reviewed Dr. Havellana's report and assesses limitations in concentration,

4    persistence and pace despite her otherwise normal findings on mental status examination."  Dkt.

5    11 at 7-8.  None of these arguments are persuasive.  An ALJ "may reject the opinion of a non-

6    examining physician by reference to specific evidence in the medical record."  *Sousa v.*

7    *Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  This is exactly what the ALJ did here when he

8    referred to Dr. Havellana's evaluation, as described above.  *See* Tr. 26.  Accordingly, the ALJ

9    did not err.

10          Finally, Ms. Clark argues the ALJ improperly ignored Dr. Knowles's diagnosis of "pain

11   disorder associated with psychological factors and a medical condition."  Tr. 439; Dkt. 11 at 8.

12   Ms. Clark is correct that the ALJ did not discuss this diagnosis.  But even assuming this were

13   error, Ms. Clark has not shown harm.  She contends that "the record shows as early as Ms.

14   Clark's gastric bypass [in 2009], she was noted to have a psychological profile which suggests 'a

15   strong likelihood that traditional medical treatment will be unsuccessful in reducing her pain

16   systems,'" Dkt. 11 at 8 (quoting Tr. 208), but she does not explain how this establishes pain

17   disorder has more than a minimal effect on her ability to do work.  This lack of explanation is

18   especially important in light of the ALJ's finding that degenerative disk disease is a severe

19   impairment and his consideration of her pain symptoms in determining her RFC.  Similarly, Ms.

20   Clark observes that Dr. Knowles noted depressive symptoms including "anhedonia, feeling

21   depressive, appetite and energy disturbance, [and] low self-esteem," *id.* (quoting Tr. 437), but

22   she does not explain how these symptoms affect her ability to work or, given that they relate to

23   depression, why they are relevant to her claims regarding pain disorder.  Finally, Ms. Clark

REPORT AND RECOMMENDATION - 6

1   raises arguments regarding Drs. Havellana's and Regets's opinions, *id.*, however these

2   arguments merely rehash her previous contentions regarding these opinions and are not

3   persuasive, as discussed above.  In short, any error in the ALJ's failure to discuss the pain

4   disorder diagnosis is harmless because it is "inconsequential to the ultimate nondisability

5   determination."  *Molina*, 674 F.3d at 1115.

6       In sum, the Court recommends affirming the ALJ's step two findings.

7   **B.    The ALJ erred in his assessment of Ms. Clark's credibility**

8       Ms. Clark challenges the ALJ's adverse credibility finding.  Dkt. 11 at 9-13.  Where, as

9   here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to

10  reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Ms.

11  Clark claimed that she cannot work primarily because of low back pain and difficulty with

12  climbing stairs and walking.  Tr. 27.  The ALJ discounted Ms. Clark's statements concerning the

13  intensity, persistence, and limiting effects of her symptoms for four reasons:  (1) her medical

14  treatment was conservative; (2) her activities were inconsistent with her allegations of disabling

15  back pain; (3) her alleged symptoms were inconsistent with the medical evidence; and (4) the

16  objective evidence did not support her claims that her back pain had worsened over the previous

17  two years.  Tr. 27-29.  As discussed below, the ALJ failed to provide clear and convincing

18  reasons that are sufficient to support his adverse credibility finding.[2]

19      **1.    Conservative medical treatment**

20      The ALJ discounted Ms. Clark's testimony because he found her treatment to be

21  conservative.  Tr. 27.  Although "evidence of 'conservative treatment' is sufficient to discount a

---

22  [2] The Commissioner's arguments on this issue essentially parrot the ALJ's reasoning.  *See* Dkt.
23  12 at 10-18.  Therefore, for the same reasons discussed below with respect to the ALJ's decision,
    the Commissioner's arguments fail.

claimant's testimony regarding severity of an impairment," *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), Ms. Clark did not receive conservative treatment. In particular, Ms. Clark received epidural steroid injections. *See* Tr. 27. Numerous courts have refused to characterize epidural steroid injections as conservative. *E.g.*, *Tagle v. Astrue*, No. CV–11–7093–SP, 2012 WL 4364242, at *4 (C.D. Cal. Sept. 21, 2012); *Christie v. Astrue*, No. 10–3448, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011); *Yang v. Barnhart*, No. ED CV 04-958-PJW, 2006 WL 3694857, at *4 (C.D. Cal. 2006). Accordingly, the Court concludes that substantial evidence does not support the ALJ's finding that Ms. Clark received only conservative treatment, and therefore this is not a clear and convincing reason to discount her testimony.

### 2.   *Activities*

The ALJ found that Ms. Clark's "activities are not consistent with those of an individual who alleged disabling back pain." *See* Tr. 29. Although an ALJ may rely on activities that "contradict claims of a totally debilitating impairment" to find a claimant less than credible, *Molina*, 674 F.3d at 1113, the ALJ's finding here is not supported by substantial evidence.

The ALJ cited only two activities. First, he pointed to Ms. Clark's swimming and stretching for exercise. *Id.* The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted). In *Vertigan*, the claimant testified that, among other things, she was able to swim, do physical therapy, and exercise at home. *Id.* The ALJ concluded that these activities were inconsistent with her claims of pain and ultimate disability. *Id.* The court, however, disagreed and determined that such activities do not detract from a claimant's credibility because "[o]ne does

1  not need to be 'utterly incapacitated' in order to be disabled." *Id.*

2        Similarly, in this case, Ms. Clark's swimming and stretching are insufficient to reject her

3  testimony because these activities are not inconsistent with her claims of pain and inability to

4  work.  Rather, health care providers encouraged her to exercise.  *See, e.g.*, Tr. 209 (advice from

5  clinical dietitian that Ms. Clark "must" "remain active"); Tr. 278-79, 281 (recommendation from

6  physical therapist that Ms. Clark do "water exercise"); Tr. 57-58 (Ms. Clark's testimony that

7  "every doctor I have been to has told me to do my stretching and stuff in the water").  The fact

8  that Ms. Clark can swim and stretch in spite of her pain and physical limitations does not detract

9  from her credibility.  *See Vertigan*, 260 F.3d at 1050.  The Court thus concludes that Ms. Clark's

10  swimming and stretching are not clear and convincing reasons to discount her testimony.

11        Second, the ALJ found that "although the claimant testified at the hearing that she was

12  unable to go scuba diving since May 2008, an April 2010 treatment note shows that the claimant

13  reported that 'she has no problems that prevent her from scuba diving.'"  Tr. 29 (quoting Tr.

14  298).  The ALJ also found that Ms. Clark's "treating provider made no mention of any disabling

15  back pain that may prevent her from engaging in scuba diving."  *Id.*  The ALJ's consideration of

16  Ms. Clark's scuba diving, however, improperly fails to take into account the entire record.  At

17  the hearing, Ms. Clark explained that although she tried to going scuba diving in the spring of

18  2010, she was unable to do so, even with the help of her husband and an instructor.  Tr. 59.  Prior

19  to her decline in health, Ms. Clark's favorite hobby was scuba diving.  Tr. 58.  It was

20  unreasonable for the ALJ to discount her alleged symptoms because of one failed attempt to

21  pursue her favorite activity, even though she told her doctor (prior to her failed attempt) that she

22  had no problems that would prevent her from scuba diving.  Similarly, her doctor's lack of

23  concern regarding her scuba diving plan is not a clear and convincing reason to discount her

REPORT AND RECOMMENDATION - 9

1  testimony.

2         In sum, the ALJ erred in finding that Ms. Clark's activities were inconsistent with her

3  claimed back pain.

4         **3.      *Inconsistency with medical evidence***

5         The ALJ discounted Ms. Clark's testimony regarding the extent of her back pain and her

6  difficulties walking based on inconsistencies between her claims and the medical evidence.  *See*

7  Tr. 27-28.  Although this is a valid reason to find a claimant less than fully credible, the ALJ here

8  erred by selectively focusing on certain aspects of the medical evidence that tended to suggest

9  non-disability while disregarding the remainder of the medical evidence.  *See Edlund v.*

10 *Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ failed to provide substantial evidence for

11 rejecting a psychologist's examination report where, inter alia, the ALJ "selectively focused on

12 aspects of [the] report which tend[ed] to suggest non-disability).  For example, the ALJ relied on

13 a May 13, 2010 chiropractic treatment note, which indicated Ms. Clark reported improvement in

14 her low back pain, Tr. 27-28 (citing Tr. 233), but ignored the treatment note from May 27, 2010,

15 which indicated Ms. Clark reported continued extreme low back pain that radiated into both legs,

16 Tr. 232.

17        The ALJ also discounted Ms. Clark's claims regarding shaking and weakness during

18 walking by pointing to a physical therapy note that she was able to walk without a limp and

19 "heel-and-toe walk," Tr. 28, but failed to give proper credit to treatment notes supporting Ms.

20 Clark's claims.  Specifically, the ALJ discounted the observation of doctor L. Joseph Fowler,

21 M.D., that Ms. Clark's "gait is slow and she has difficulty performing heal and toe walking

22 because it aggravates her back pain" because Dr. Fowler also noted that "[s]traight leg raising is

23 negative in the sitting and supine position."  Tr. 319 (Dr. Fowler's treatment note), 28 (ALJ's

1    discussion of Dr. Fowler's note).  The Court cannot fault an ALJ for offering a reasonable

2    interpretation of the record, but in this instance, it was unreasonable for the ALJ to reject Dr.

3    Fowler's observation that Ms. Clark had difficulty *walking* because Ms. Clark was able to

4    perform certain tests while *lying down* or *seated*.

5        The ALJ, moreover, discussed the examination results by physiatrist Suk Lee, M.D., but

6    omitted evidence from this report that supports Ms. Clark's claimed back pain and difficulties

7    walking.  Tr. 28.  The ALJ concluded that Dr. Lee's examination results were "not consistent

8    with the alleged disabling back pain" because, "Dr. Lee indicated on examination, the claimant

9    had a negative straight leg raise test bilaterally, no sensory deficit, and a segmental motion

10   examination was well tolerated and did not reproduce the claimant's pain."  *Id.*  But Dr. Lee also

11   noted:  "in distress as a result of pain"; "gait antalgic"; and "Lumbar range of motion is

12   decreased in extention, decreased in flexion, painful with flexion and painful with extension."

13   These facts are consistent with Ms. Clark's alleged back pain, and therefore the ALJ should have

14   discussed them when assessing Dr. Lee's examination results.  Tr. 396.

15       The ALJ also relied on the "relatively normal examination results and recommendations

16   for conservative treatment" by pain management specialist Hyun Hong, M.D., and neurologist

17   Kara Warden, M.D.  Tr. 28.  With respect to Dr. Hong, the ALJ cited the doctor's finding that

18   Ms. Clark had a normal gait, Tr. 28, but omitted the doctor's recommendation that Ms. Clark use

19   a power chair, as needed, for ambulation, Tr. 446.  The ALJ also noted that Ms. Clark reported

20   relief from the lumbar facet block, which Dr. Hong administered, Tr. 28, but he ignored Ms.

21   Clark's report of increased cervical spine pain after the facet block, Tr. 443, 445.  With respect to

22   Dr. Warden, the ALJ concluded that the doctor's treatment notes showed that Ms. Clark's low

23   back pain caused less than disabling limitations, Tr. 28, but he failed to account for Dr. Warden's

REPORT AND RECOMMENDATION - 11

1    notes that Ms. Clark had a slow gait related to her pain and that formal muscle strength testing

2    was limited by Ms. Clark's pain, Tr. 447-49.

3         In sum, the ALJ's conclusion that Ms. Clark's claims were inconsistent with the medical

4    evidence erroneously disregarded medical evidence supporting her claims.  *See Edlund*, 253 F.3d

5    at 1159.  As such, this is not a clear and convincing reason to discount her credibility.

6         ***4.      Objective evidence***

7         Finally, the ALJ discounted Ms. Clark's testimony because "the objective evidence does

8    not support the claimant's allegations that her back pain has worsened over the past two years.

9    Overall, the objective evidence shows generally unchanged and stable findings."  Tr. 27.

10   Although medical evidence is a relevant factor in determining the severity of a claimant's pain

11   and its disabling effects, "subjective pain testimony cannot be rejected on the sole ground that it

12   is not fully corroborated by objective medical evidence."  *Rollins v. Massanari*, 261 F.3d 853,

13   855 (9th Cir. 2001); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("[I]t is

14   improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground

15   that it is not fully corroborated by objective medical findings.").  As discussed above, the ALJ's

16   other reasons for discounting Ms. Clark's testimony were not clear and convincing.  As such, the

17   Court cannot affirm the ALJ based solely on his finding of "generally unchanged and stable"

18   objective evidence.

19        ***5.      Harmless error analysis***

20        The Court may only reverse an ALJ's decision where the error was harmful.  *Molina*, 674

21   F.3d at 1111.  The ALJ's error in failing to provide any clear and convincing reason supported

22   by substantial evidence to discount Ms. Clark's testimony was harmful because it affects the

23   RFC, which in turn may affect the ultimate disability determination.  *See id.* (error harmless

where it is "inconsequential to the ultimate nondisability determination").  Accordingly, the

Court recommends reversing and remanding for reconsideration of Ms. Clark's credibility.

**C.     Medical opinions**

Ms. Clark argues that her RFC was incomplete because the ALJ erred in assessing the

opinions of treating doctor Ellen Modell, M.D., and non-examining doctor Robert Hoskins, M.D.

Dkt. 11 at 14-16.[3]  In general, more weight should be given to the opinion of a treating physician

than to a non-treating physician, and more weight to the opinion of an examining physician than

to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where

contradicted, a treating or examining physician's opinion may not be rejected without "specific

and legitimate reasons supported by substantial evidence in the record for so doing."  *Id*. at 830-

31 (quotation omitted).  The ALJ may reject physicians' opinions "by setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing

*Magallanes*, 881 F.2d at 751).

**1.       The ALJ's errors with respect to Dr. Modell were harmless**

Dr. Modell saw Ms. Clark in January 2011 for a neurologic evaluation of Ms. Clark's

bilateral leg weakness.  *See* Tr. 368.  Dr. Modell opined Ms. Clark was unable to walk any

number of blocks without having to rest or experience pain; able to stand for five minutes and sit

for 20 minutes at a time; limited to sitting, standing, and walking less than two hours in an eight-

hour work day; unable to twist, stoop, crouch, squat, reach, and climb ladders and stairs; and able

---

[3] Ms. Clark also argues the ALJ improperly failed to consider her depression and pain disorder in
developing her RFC.  Dkt. 11 at 16.  As discussed above, however, Ms. Clark fails to establish
that those disorders caused her any limitations beyond those already considered by the ALJ with
respect to her degenerative disc disease.  As such, the ALJ did not err in omitting consideration
of depression and pain disorder in fashioning Ms. Clark's RFC.

REPORT AND RECOMMENDATION - 13

1   to lift less than 10 pounds occasionally.  Tr. 377-79.  She also opined Ms. Clark needed to be

2   able to shift positions at will and take unscheduled breaks every hour.  *Id.*

3         The ALJ found Dr. Modell's opinion did not warrant additional limitations beyond those

4   accounted for the in RFC.  Tr. 29.  The ALJ gave several reasons:  Dr. Modell's treatment

5   relationship with Ms. Clark was brief and consisted of only two examinations in less than a one-

6   month period; much of Dr. Modell's opinion was based on Ms. Clark's subjective report due to

7   the brief treatment history and a lack of supporting objective evidence; Dr. Modell's conclusions

8   were not consistent with her own treatment notes and were inconsistent with the overall record;

9   and Dr. Modell's opinions that Ms. Clark needed to be able to shift positions at will, take

10   unscheduled breaks, and sit for a total of two hours in an eight-hour period were contradictory to

11   Ms. Clark's testimony "that she can sit through an entire movie before needing to change

12   positions" and "that she spends six to eight hours per day sitting in her recliner."  Tr. 29-30.

13         First, as to the treatment relationship, Ms. Clark contends that because Dr. Modell is a

14   specialist in neurology, her opinion should have been given additional weight.  Dkt. 11 at 15

15   (citing 20 C.F.R. § 404.1527(c)(5)).  This argument is unavailing.  Section 404.1527 does not

16   require the ALJ to give weight to a specialist:  "We *generally* give more weight to the opinion of

17   a specialist about medical issues related to his or her area of specialty than to the opinion of a

18   source who is not a specialist."  § 404.1527(c)(5) (emphasis added).  Moreover, the regulations

19   expressly allow an ALJ to consider the length of a treatment relationship and the frequency of

20   examination in determining the weight to give a treating doctor's opinion.  § 404.1527(c)(2)(i).

21   This is a factor the ALJ considered in this case, and it was not error to do so.

22         Ms. Clark next argues that the ALJ erroneously rejected Dr. Modell's opinions as based

23   on Ms. Clark's subjective report of limitations because the ALJ improperly found Ms. Clark less

REPORT AND RECOMMENDATION - 14

1   than fully credible.  Dkt. 13 at 10.  Ms. Clark is correct.  As discussed above, the ALJ erred in

2   assessing Ms. Clark's credibility.  Therefore, the mere fact that Dr. Modell relied on Ms. Clark's

3   subjective reports is not a specific and legitimate reason to reject Dr. Modell's opinion.  *Cf. Bray*

4   *v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ may discount a

5   physician's opinion that was based on a claimant's subjective characterization of her symptoms

6   where the ALJ properly determines the claimant's description of her limitations was not entirely

7   credible); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

8         Ms. Clark also argues the ALJ erred by misrepresenting the evidence regarding Ms.

9   Clark's ability to sit through a movie, which the ALJ relied on in finding Dr. Modell's

10  conclusions that Ms. Clark must be able to shift positions at will and take unscheduled breaks

11  every hour were contradictory to Ms. Clark's own testimony.  Dkt. 11 at 16.  The Court agrees.

12  The ALJ wrote that Ms. Clark testified "that she can sit through an entire movie before needing

13  to change positions."  Tr. 30.  In fact, Ms. Clark testified that she could sit through a movie when

14  she is in her recliner and "can lay back with my feet up to where all the pressure's not being

15  jammed, jamming my back down."  Tr. 54; *see also* Tr. 55.  That Ms. Clark can lie in a recliner

16  for the duration of a movie is not contradictory to Dr. Modell's opinion that she would need to be

17  able to shift positions at will or take unscheduled breaks while at work.  Similarly unsupported

18  by substantial evidence is the ALJ's finding that Ms. Clark's ability to spend six to eight hours a

19  day in her recliner contradicts Dr. Modell's opinion that she can sit only two hours in an eight-

20  hour work day; Ms. Clark testified that she is able to lie in her recliner, Tr. 54, and lying back is

21  not the same as sitting at work.  The ALJ thus erred in finding Dr. Modell's opinions inconsistent

22  with Ms. Clark's testimony.

23        Finally, Ms. Clark argues that the ALJ erred by ignoring Dr. Modell's findings of

REPORT AND RECOMMENDATION - 15

decreased pinprick sensation in a stocking distribution, clumsy left hand rapid alternating movements, and probable diabetic peripheral neuropathy, as well as her notations that Ms. Clark has difficulty with stairs, a burning sensation in her feet, and cramping in her calves with exertion.  Dkt. 11 at 15-16.  In other words, Ms. Clark contends the ALJ's finding that Dr. Modell's conclusions are not consistent with her treatment notes is not supported by substantial evidence.  This is not a case, however, where that ALJ selectively focused on the aspects of Dr. Modell's treatment notes that tended to suggest non-disability.  *See Edlund*, 253 F.3d at 1159. First, there is no rule that an ALJ must rely on self-reported symptoms in weighing a doctor's opinion.  Rather, an ALJ may discount opinions that lack objective evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").  And second, the objective evidence the ALJ failed to discuss—decreased pinprick sensation and clumsy left hand rapid alternating movements—is not so supportive of Dr. Modell's opinion that the Court can say the ALJ erred by finding her opinion not consistent with her treatment notes, particularly given the numerous normal findings discussed by the ALJ.  *See* Tr. 30; *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").  As such, the ALJ did not err in finding Dr. Modell's opinion inconsistent with her treatment notes.

Because the ALJ gave some unsupported reasons for rejecting Dr. Modell's opinion, the Court must determine whether the ALJ's reliance on such reasons was harmless error.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (harmless error standard applies where one of the ALJ's several reasons supporting an adverse credibility finding

1    was held invalid).  Under the *Batson* standard, so long as there remains "substantial evidence

2    supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's

3    ultimate conclusion," the error is deemed harmless and does not warrant reversal.  *Id.* at 1197;

4    *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

5    Here, substantial evidence supports the ALJ's decision to reject Dr. Modell's opinions based on

6    the brief treatment relationship, the lack of supporting objective evidence, the lack of consistency

7    between the opinions and the treatment notes, and the inconsistency with the overall record.

8    These findings are not tainted by the ALJ's improper reliance on Ms. Clark's subjective reports

9    of symptoms and her testimony.  As such, the error does not affect the ALJ's finding that Dr.

10   Modell's opinion does not warrant additional limitations in the RFC.  The Court thus concludes

11   the errors the ALJ committed in discounting Dr. Modell's opinions are harmless, and

12   recommends the ALJ's evaluation of Dr. Modell's opinions be affirmed.

13   **2.    *The ALJ committed harmful error with respect to Dr. Hoskins***

14          In October 2010, Dr. Hoskins opined that Ms. Clark had the following limitations:

15   occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or

16   walk for about six hours in a normal eight-hour work day and sit for about six hours in a normal

17   eight-hour work day; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs,

18   stoop, crouch, and crawl; frequently balance and kneel; occasionally reach; and avoid

19   concentrated exposure to vibration and hazards.  Tr. 328 (Dr. Hoskins's affirmation of doctor

20   Brian Pratt's July 2010 opinion), 246-253 (Dr. Pratt's opinion).  The ALJ found Dr. Hoskins's

21   opinion "most persuasive" but discounted several specific opinions.

22          First, although the ALJ concurred "with Dr. Hoskins's conclusion that the claimant's

23   reaching is limited, the objective evidence does not support limiting the claimant's reaching to

REPORT AND RECOMMENDATION - 17

occasional." Tr. 29.  Ms. Clark contends this reason is not specific and legitimate because the ALJ did not take into account treatment notes contradicting his conclusion.  Dkt. 11 at 14-15. The Commissioner responds by summarizing the ALJ's opinion and asserting that he properly rejected Dr. Hoskins's opinion regarding reaching as inadequately supported by clinical findings. Dkt. 12 at 19-20 (citing *Thomas*, 278 F.3d at 957).  The Court agrees with Ms. Clark.  The ALJ's bare conclusion—without further discussion—that objective evidence does not support Dr. Hoskins's opinion is broad and vague, rather than specific and legitimate.  *See McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989, as amended Oct. 19, 1989) (broad and vague reasons will not suffice to support ALJ's conclusions).  Moreover, the ALJ's conclusion is not supported by substantial evidence because Dr. Hoskins explained that the reaching limitation was based on Ms. Clark's degenerative disc disease in her cervical spine, Tr. 249, as evidenced by MRI results, which he discussed, Tr. 253.

Second, the ALJ rejected Dr. Hoskins's limitations related to reaching, balancing, stooping, kneeling, crouching, and crawling because Ms. Clark goes swimming, which "requires the claimant to perform the above postural limitations." Tr. 29.  Ms. Clark argues this reasoning is erroneous because "her ability to perform postural activities in water is not akin to being able to perform them on dry land."  Dkt. 11 at 15.  The Commissioner responds that an ALJ may properly reject a medical opinion that is contradicted by a claimant's daily activities.  Dkt. 12 at 20.  The Court concurs with Ms. Clark.  It was unreasonable for the ALJ to infer that Ms. Clark performed these postural activities while swimming in light of the scant information in the record regarding what swimming activities Ms. Clark performed.  In particular, the Court is unable to imagine a situation in which swimming would require Ms. Clark to crawl.  Further, as Ms. Clark points out, even if she were able to perform some of these activities while in the water, they

REPORT AND RECOMMENDATION - 18

1   would not reasonably transfer to the workplace.  The ALJ thus erred by relying on Ms. Clark's

2   swimming to discount Dr. Hoskins's opinions.

3         The ALJ provided an additional reason to reject Dr. Hoskins's limitations related to

4   balancing, stooping, kneeling, crouching, and crawling:  that they are not supported by the

5   objective evidence.  Tr. 29.  Specifically, the ALJ stated that "treatment notes generally showed

6   that the claimant had a normal gait, normal muscle tone, and normal strength in the distal

7   portions of her limbs."  *Id.*  He also cited Dr. Modell's findings that Ms. Clark had "only mild

8   sensory neuropathy in her lower extremities and no evidence of radiculopathy."  *Id.*  Ms. Clark

9   argues the ALJ's analysis ignores "the many times Ms. Clark has been assessed with a slow and

10  careful gait due to pain and has had weakness in her limbs."  Dkt. 11 at 15.  The Commissioner

11  again responds that it was proper for the ALJ to reject Dr. Hoskins's opinions as not supported

12  by clinical findings.  Dkt. 12 at 20.

13        The Court concludes that the ALJ did not err by selectively assessing the evidence.

14  "[W]hen the evidence is susceptible to more than one rational interpretation, [the Court] must

15  uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

16  record."  *Molina*, 674 F.3d at 1111.  This is the case here.  Although Ms. Clark is correct that

17  there is evidence in the record of her "slow and careful gait due to pain" and "weakness in her

18  limbs," the Court cannot say that it was unreasonable for the ALJ to conclude that the treatment

19  notes "generally" showed otherwise.  *See, e.g.*, Tr. 280 (August 2010 physical therapy note

20  indicating Ms. Clark was able to walk without a limp, heel and toe walk, and did not have

21  weakness in her lower extremities), 384-85 (similar findings by Dr. Albert), 434 (similar findings

22  by Dr. Hong).

23        Nevertheless, there is a disconnect between most of the ALJ's proffered justifications for

REPORT AND RECOMMENDATION - 19

1   rejecting Dr. Hoskins's opinions and the opined limitations.  The ALJ essentially concluded Ms.

2   Clark could balance, stoop, kneel, crouch, and crawl because there was medical evidence that she

3   had normal gait, normal muscle tone, normal strength, mild sensory neuropathy, and absence of

4   radiculopathy.  *See* Tr. 29.  The Court agrees that the ALJ could reasonably infer that Ms. Clark

5   could balance based on evidence of her normal gait because a person must be able to balance to

6   walk normally.  The Court, however, finds it unreasonable to infer that that Ms. Clark is able to

7   stoop, kneel, crouch, and crawl based on any of the medical evidence cited by the ALJ; this

8   medical evidence does not establish that Ms. Clark could perform the activities Dr. Hoskins said

9   she could not.  As such, the ALJ failed to provide specific and legitimate reasons to reject Dr.

10  Hoskins's assessment of limitation in these areas.

11          Finally, the ALJ rejected Dr. Hoskins's opinion that Ms. Clark should avoid concentrated

12  exposure to vibration and hazards because "[s]uch limitations are not consistent with the medical

13  record, particularly the minimal examination findings as discussed above.  Furthermore, Dr.

14  Hoskins did not provide an explanation for such limitation."  Tr. 29.  Ms. Clark offers no

15  challenge to this reasoning.  As such, the Court will not disturb the ALJ's conclusion on this

16  issue.[4]

17          In sum, the ALJ properly rejected Dr. Hoskins's opinions regarding limitations related to

18  balancing and exposure to vibration and hazards.  The ALJ, however, failed to offer a specific

19  and legitimate reason supported by substantial evidence to reject Dr. Hoskins's opinions related

20  to reaching, stooping, kneeling, crouching, and crawling.  This error was harmful because these

---

22  [4] Even if Ms. Clark did challenge the ALJ's reasoning on this issue, an ALJ may properly reject
    an opinion for lack of detail or explanation.  *See* 20 C.F.R. § 404.1527(d)(3) ("The better an
    explanation a source provides for an opinion, the more weight will be given that opinion."); *see*

23  *also Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (finding the ALJ properly
    rejected a treating physician's vague and conclusory opinion that the claimant could work).

1   functional limitations were not accounted for in Ms. Clark's RFC or in any hypothetical

2   presented to the vocational expert ("VE").  As such, the error was not inconsequential to the

3   ultimate determination.  *See Molina*, 674 F.3d at 1111.  The Court thus recommends remanding

4   for the ALJ to reconsider Dr. Hoskins's opinions related to reaching, stooping, kneeling,

5   crouching, and crawling, and if necessary, incorporate these limitations into Ms. Clark's RFC

6   and a hypothetical to the VE.

7   **D.**     ***The ALJ's step four findings***

8         Ms. Clark contends the ALJ did not properly support his step four findings.  Dkt. 11 at

9   16-18.  Because the ALJ must revisit his RFC assessment on remand and then reconsider the

10   subsequent steps in the five-step disability evaluation, it would be premature for the Court to

11   address Ms. Clark's step four arguments now.

12                     **CONCLUSION**

13         For the foregoing reasons, the Court recommends that the Commissioner's decision be

14   **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to

15   sentence four.  On remand, the ALJ should reassess Ms. Clark's credibility taking full account of

16   the medical evidence and reevaluate Dr. Hoskins's opinion.  The ALJ should re-determine Ms.

17   Clark's RFC as appropriate and proceed with steps four and five as necessary.

18         A proposed order accompanies this Report and Recommendation.  Objections, if any, to

19   this Report and Recommendation must be filed and served no later than **November 15, 2013.**  If

20   no objections are filed, the matter will be ready for the Court's consideration on **November 22,**

21   **2013**.  If objections are filed, any response is due within 14 days after being served with the

22   objections.  A party filing an objection must note the matter for the Court's consideration 14

23   days from the date the objection is filed and served.  Objections and responses shall not exceed

1    twelve pages.  The failure to timely object may affect the right to appeal.

2            DATED this 1st day of November, 2013.

3

4                                              _____
                                               BRIAN A. TSUCHIDA
5                                              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 22